## SOUTHERN FREEZING & LOCKER CO. v. CREAMERY PACKAGE MFG. CO.

### No. 10305.

Circuit Court of Appeals, Fifth Circuit.

Nov. 14, 1942.

B. D. Murphy, of Atlanta, Ga., for appellant.

J. F. Kemp and J. D. Tindall, both of Atlanta, Ga., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant, defendant below, suffered a directed verdict for the amount sued for before it finished introducing its evidence because in the Court's opinion the counterclaim which it was making was cut off and waived by a writing executed by the parties on November 15, 1940. This appeal followed.

There is evidence as follows: On March 23, 1940, the appellee by a written contract sold to the appellant certain refrigerating machinery for the latter's plant including dry blowers made by the Carrier Corporation. The machinery sent and installed did not include these dry blowers, but instead brine spray blowers made by Acme Industries. A witness for appellee testified that the substitution was asked for orally by one J. B. McCrary, but his authority to act or speak for appellant does not appear. These brine spray blowers caused a brine mist to settle upon the steel lockers in appellant's plant and damaged them. On appellant's complaining of the substitution, and also that warranted temperatures were not produced, a written agreement was made on July 1, 1940, that certain changes would be made in the construction of the Acme blowers, and that "these blowers are the same sizes as specified in the contract and will maintain temperatures as indicated therein * * * and as stated the units when reinstalled and given a test will be entirely satisfactory." The Acme blowers when altered and reinstalled still caused brine mist and were unsatisfactory. The written agreement of November 15, 1940, was then made, the portions of which presently important are: "It is our understanding that in order to correct deficiencies in the refrigeration of our plant" certain changes in machinery and installation are to be made by appellee other than the blowers; "all of the above work is in line with a desire on your part of putting the plant into successful refrigeration operation and to fulfil our contract with you as to maintaining temperatures as set out in same." For the extra work and installation, and insulating all piping $431 additional was to be paid. The agreement ends thus: "It is to be understood that this agreement shall in no way act as a waiver of any of the conditions and obligations imposed upon the parties by the former contract heretofore executed between them, and any rights which either of the parties may have by virtue of such former contract are to be considered as of full force and effect." The blowers are not mentioned, but the Acme blowers were taken out and the Carrier blowers were put in as specified in the original contract.

The counter-claim, which appellant was not allowed to prove, included damages done to its steel lockers by the brine, and the cost of cleaning and restoring the premises, and the loss of the 1940 season's business by inability to maintain low temperatures before December, $6,000 being claimed.

We think there were jury issues. The authority of J. B. McCrary to authorize the substitution of Acme blowers was not proven, and all knowledge of his having done so was denied by the appellant's contracting officer until after the Acme blowers were installed. The agreement of July 1, made by this officer, was not a ratification of the substitution unless after the changes suggested and a test the required temperatures were maintained and the blowers were satisfactory. The agreement of November 15, made after the Acme blowers were again found unsatisfactory, was one for additional work and materials, and expressly retained in force all the conditions and obligations of the original contract; and it was because of the original contract, and not of any other clause of the November agreement, that the Carrier blowers were finally installed. The one agreement was not superseded by the other. There was in the making of the latter agreement no waiver or settlement of any claims for damages theretofore incurred under the former. Whatever might have been thought on that point had the parties not spoken, they expressly said "*any rights* which either of the parties may have by virtue of such former contract are to be considered as of full force and effect." No law or precedent denies validity to that stipulation.

But the original contract says: "The Company (appellee) shall not be liable for damages or consequential damages in connection with the merchandise, apparatus and machinery sold hereunder, other than to furnish F. O. B. its factory free

662

of cost to the purchaser, any repairs necessary because of defective material or workmanship, and then only when advised thereof in writing * * * excepting merchandise, apparatus and machinery not manufactured by the Company, and in respect thereto the purchaser expressly releases the Company from any liability in connection therewith and expressly accepts the guaranty only of the original manufacturer thereof, and all implied warranties and guarantees are hereby expressly waived by the purchaser." We do not doubt the general validity of the quoted stipulation. If the machines ordered had at first been sent, damages consequent on bad performance might be held waived. But appellee could not send something else, if substituted without appellant's authority, and claim immunity; nor as to temperatures is it plain that protection from liability is afforded, for there was an express guaranty as to temperatures. We make no positive ruling on these points, for the damages and their precise causes have not yet been proven. We hold only that the evidence so far as it has gone does not make it impossible that there may be recoverable damages. The case ought to have been fully tried. The judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.